**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

ANNA MAE OSBORNE,

    Plaintiff,

v.

NANCY BERRYHILL,
Acting Commissioner of
Social Security,

     Defendant.

CIVIL ACTION NO.: 3:18-CV-67
(GROH)

# REPORT AND RECOMMENDATION

## I. Introduction

  This case arises from the denial of Plaintiff, Anna Mae Osborne's ("Plaintiff") application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), Jeffrey P. La Vicka, concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  Plaintiff's request for Appeals Counsel review was denied, making the ALJ's decision the final decision of Defendant, Nancy A. Berryhill ("Commissioner"), the acting Commissioner of Social Security.  Plaintiff seeks judicial review of the Commissioner's decision.

  The Magistrate Judge has considered the parties' briefs and the record on appeal.  The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Accordingly, the undersigned recommends that Plaintiff's Motion for Summary Judgment be denied, and Defendant's Motion for Summary Judgment be granted.

## II.    Factual/Procedural History

Plaintiff filed her application for Title II benefits on or about June 25, 2014, in which she alleged a disability since August 19, 2011.  R. 314-15.  Plaintiff's claim for disability benefits was denied initially on September 5, 2014 (R. 186-201, 202), and again upon reconsideration on January 8, 2015 R. 203-221.  Plaintiff filed a timely request for hearing on February 13, 2015.  R. 234-35.

An administrative hearing was held on December 16, 2016.  Plaintiff appeared in Martinsburg, WV before the Honorable Administrative Law Judge ("ALJ") Jeffrey P. La Vicka, who presided over the hearing from Morgantown, WV.  During the hearing, the Plaintiff and Vocational Expert ("VE") Casey B. Vass provided testimony.  R. 37-59.  On February 7, 2017, the ALJ issued a decision in which the ALJ found Plaintiff had not been under a disability at any time since her application date.  R. 13-36.

Plaintiff sought review of the ALJ's decision with the Appeals Council, which denied Plaintiff's request for review in a Notice dated March 7, 2018.  As a result, the ALJ's decision became the final decision of the Commissioner.  R. 1-7.  Plaintiff filed the instant civil action on May 4, 2018, seeking reversal of the ALJ's decision and remand.  ECF No. 1.

Plaintiff filed a previous application for disability benefits pursuant to Title II of the Social Security Act on or about December 22, 2011.  Said application was denied initially on March 27, 2012, and upon reconsideration on April 23, 2012.  The application was denied in an ALJ decision dated August 28, 2013.  No appeals were filed.  In her application of December 22, 2011, Plaintiff alleged disability beginning on or about August 19, 2011.  Plaintiff alleges the same date of disability in the application currently under review.  The ALJ noted that, to the

2

extent this overlapping date of alleged disability implies that the prior decision should be revisited, the ALJ found no basis for reopening the prior determination.  R. 16.  Although the ALJ restricted the scope of claimant's alleged disability status to August 29, 2013 (the day after the binding decision on Plaintiff's prior determination), the ALJ nevertheless considered Plaintiff's entire medical history in making the determination vis-à-vis the instant application.  R. 16.

## III.   ALJ Decision

### A.  The Five-Step Evaluation Process

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520.  The first step in the process is to determine whether a claimant is currently engaged in substantial gainful activity.  § 404.1520(b).  If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.  § 404.1520(c).  If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  § 404.1520(d).  If impairment meets or equals a listed impairment, the claimant is disabled.  *Id.*  However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity (hereinafter "RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of his impairments.  § 404.1520(e). After determining a claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to

perform the requirements of his past relevant work.  § 404.1520(f).  If the claimant does not have the RFC to do his past relevant work, then he has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's age, education, and work experiences.  § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).

### B.  ALJ Findings

Initially, the ALJ found that Plaintiff met the insured status requirements for a period of disability and disability insurance benefits through December 31, 2016.  R. 18.  At step one of the process, the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time from August 29, 2013 through her date of last insured of December 31, 2016.  R. 19. The ALJ further found that, through the date last insured (December 31, 2016), Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the left knee, status post-surgery; reports of bilateral hip pain due to possible osteoarthritis of the hips; history of Crohn's disease; migraines; and depression.  The ALJ found that the aforementioned determinable impairments significantly limited the ability to perform basic work activities as required by SSRs 85-28 and 96-3p, and further adopted all severe impairments from the decision concerning Plaintiff's prior application for disability benefits because the medical evidence of record did not demonstrate any significant improvement of these impairments since the prior decision.  The finding vis-à-vis migraines is new to the instant application.  R. 19.

At the third step, the ALJ found that Plaintiff does not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed

impairments.  R. 19.  The ALJ then determined that Plaintiff has the residual functional capacity

("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) that:

> affords a sit/stand option with an opportunity to alternate between sitting and
> standing for up to 2 minutes every 30 minutes throughout an 8 hour work day
> without going off task; requires no foot control operation bilaterally; requires no
> kneeling, crouching, crawling, or climbing ladders, ropes, or scaffolds, and no
> more than occasional climbing ramps and stairs, balancing, or stooping; requires
> no more than frequent bilateral reaching and overhead reaching; requires no more
> than frequent bilateral handling, fingering, and feeling; accommodates the use of
> a hand held assistive device for ambulating only (the contralateral upper extremity
> can be used to lift and carry up to exertional limits); avoids concentrated exposure
> to wetness and humidity; voids all exposure to extreme heat or cold, excessive
> vibration, irritants (such as fumes, odors, dust, poorly ventilated areas), chemicals,
> unprotected heights, hazardous machinery, and commercial driving; provides a
> worksite located within 100 feet of a restroom; involves only simple, routine, and
> repetitive tasks requiring only simple decisions, no fast paced production
> requirements, and few work place changes; and involves no more than occasional
> interaction with the public, coworkers, and supervisors.  R. 22.

At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work.  At

step five, the ALJ concluded that Plaintiff is capable of performing other jobs in the national

economy that exist in significant numbers.  R. 29-30.

## IV.   Motions for Summary Judgment

### A.   Arguments of the Parties

#### 1.   Plaintiff's Arguments

Plaintiff contends that the ALJ's pain and subjective symptoms analyses are not in

compliance with regulatory law and case law.  Specifically, Plaintiff argues that the ALJ did not

properly complete the two-tiered subjective symptoms analysis set forth in *Lewis v. Berryhill*,

858 F.3d 858 (4th Cir. 2017).  Rather, Plaintiff argues that the ALJ relied "almost exclusively"

upon objective medical evidence, or a lack thereof, to justify his conclusion that Plaintiff did not

suffer from disabling pain.  ECF No. 12 at 11.

5

Plaintiff further argues that the ALJ failed to provide an explanation of how he concluded that Plaintiff's statements regarding her migraine headaches were inconsistent with the medical evidence, instead making "only conclusory statements" regarding why he rejected Plaintiff's subjective symptoms, and without properly evaluating all of the factors as required pursuant to 20 C.F.C. § 404.1529(c).  Plaintiff also relies upon *Eden v. Berryhill*, No. 2:16-cv-03703, 2017 WL 1404380 (Mar. 28, 2017), *adopted and remanded by* 2017 WL 1398341 (Apr. 18, 2017) to support this argument.  ECF No. 12 at 12-13.

Finally, Plaintiff argues that the ALJ's subjective symptom finding is unsupported by substantial evidence.  Rather, it is Plaintiff's position that, based upon the evidence in the record, Plaintiff does not have the capacity to function at any RFC level that requires an eight-hour work day or its equivalent.  ECF. No. 12 at 14.

## 2.     Defendant's Arguments

Defendant maintains that Plaintiff failed to prove that she was disabled during the relevant period.  Defendant further contends that the ALJ conducted the appropriate analysis and that substantial evidence supports the ALJ's finding that Plaintiff's allegations of disabling migraines were not fully supported by the medical and other evidence.  ECF No. 15.

## B.     The Standards

## 1.     Summary Judgment

Summary Judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548,

2552 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but…must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

### 2.      Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence."   42 U.S.C. § § 405(g), 1383(c)(3).   "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."   *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal citations omitted).  "Substantial evidence" is not a "large or considerable amount of evidence, but rather, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).   The decision before the Court is "not whether [a claimant] is disabled, but whether the ALJ's finding [that the claimant is not disabled] is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and quotations omitted).  The ALJ's decision must be upheld if it is supported by "substantial evidence."  42 U.S.C. § § 405(g), 1383(c)(3).   "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F.Supp. 686, 687 (S.D.W.Va. 1963).

**C.      Discussion**

In the instant case, after reviewing the record, the applicable law and the Court file, the undersigned would conclude that Plaintiff's assignments of error are without merit.   The undersigned would further conclude that substantial evidence supports the ALJ's decision that Plaintiff's allegations of disabling migraines are not fully supported by the medical and other evidence.

**1.  Objective Medical Evidence**

Contrary to Plaintiff's assertion, the ALJ did not rely "almost exclusively" upon objective medical evidence to justify the ALJ's decision that Plaintiff's migraine headaches are not disabling.   Rather, as is evident from the ALJ's opinion, the ALJ considered both objective and "other" evidence.

Objective medical evidence is "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption."   20 C.F.R. § 404.1529(c)(2).   "Other evidence," is defined as "information that…medical sources or nonmedical sources provide about…pain or other symptoms."   20 C.F.R. § 404.1529(c)(3).   An examination of the pertinent findings of the ALJ's decision demonstrates that the ALJ considered both types of evidence when making his findings vis-à-vis Plaintiff's migraine headaches:

> In addition, the newly established severe impairment of migraines does not prevent [Plaintiff] from all work acuity.  As noted above, in the prior decision, the claimant reported headaches that were related to her cervical impairment and were found to be non-severe…. However, prior to August 2013, the claimant was prescribed medication for migraines by her neurologist and she had continued with some treatment with a neurologist in 2013…. This is found to be a severe impairment.  However, objective findings do not support debilitating limitations. An Electroencephalogram was normal…and the claimant reported improvement of migraines with medication….Thereafter, the record shows few complaints of migraines to treating sources, no treatment with a neurologist, and no emergency

room visits or hospitalizations for headaches….The undersigned finds that the objective medical evidence does not support the frequency or degree of functional limitation the claimant alleges is caused by this impairment, as she has had little treatment, she reported improvement with medication, and her activities are not significantly limited.  Accordingly, it is fully accommodated in the above residual functional capacity with the limitation to unskilled low stress, sedentary exertional work with a sit/stand option.

R. 26.  It is clear from the aforementioned paragraph that the ALJ considered objective medical evidence in the form of the results of Plaintiff's Electroencephalogram.  The ALJ also clearly considered "other" evidence in the form of plaintiff's complaints to treating sources; Plaintiff's history of treatment visits; and the extent to which medication helped with her symptoms.  For these reasons, this argument is not persuasive.

## 2.  Subjective Symptom Analysis

Plaintiff next argues that the ALJ's subjective symptom analysis did not explain how the ALJ concluded that Plaintiff's statements regarding her migraine symptoms are inconsistent with the medical evidence.  Rather, Plaintiff contends that the ALJ made only conclusory statements regarding why he rejected Plaintiff's complaints about her migraine headaches without indicating why he believed Plaintiff was not credible and without properly considering all of the factors he was required to consider pursuant to 20 C.F.R. § 404.1529(c) or *Eden v. Berryhill*. This argument is similarly without merit.

As has been noted above, in his subjective symptom analysis, the ALJ discussed the subjective features of Plaintiff's medical treatment after 2013 (the time period relevant to the instant application), noting few attempts to seek treatment from medical sources for her migraine headaches.  The ALJ further recounted that Plaintiff did not treat with a neurologist after 2013 for migraines and that she had no emergency room visits or hospitalizations for migraines. Finally, the ALJ noted Plaintiff's statement that her migraines improved with medication.  R. 26.

In highlighting this evidence, the ALJ drew a contrast between the medical evidence of record and Plaintiff's testimony regarding the frequency and intensity of her migraines, thereby demonstrating that Plaintiff's testimony regarding the intensity and persistence of her migraine headaches differs from the evidence contained in the record.  It is this demonstration which serves as the ALJ's explanation as to why he found that Plaintiff's allegations about the intensity and persistence of her migraine headache symptoms are not borne out by the balance of the evidence contained in the record.

Plaintiff further argues that the ALJ failed to evaluate all of the factors contained within 20 CFR § 404.1529(c) and SSR 16-3p.  This argument is also not persuasive.

20 CFR 404.1529(c) provides in relevant part as follows:

(c) Evaluating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work—
(1) General. When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work. In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you. We also consider the medical opinions as explained in § 404.1520c. Paragraphs (c)(2) through (c)(4) of this section explain further how we evaluate the intensity and persistence of your symptoms and how we determine the extent to which your symptoms limit your capacity for work, when the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain.
(2) Consideration of objective medical evidence. Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption. Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely

because the available objective medical evidence does not substantiate your statements.

(3) Consideration of other evidence. Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms. Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled. We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons. Section 404.1520c explains in detail how we consider medical opinions and prior administrative medical findings about the nature and severity of your impairment(s) and any related symptoms, such as pain. Factors relevant to your symptoms, such as pain, which we will consider include:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

However, a review of the ALJ's decision shows that the ALJ did in fact properly consider all necessary evidence in accordance with 20 C.F.R. § 404.1529(c).  Indeed, the ALJ decision demonstrates that he considered: objective medical evidence (encephalogram, R. 26); "other" evidence contained within the record (complaints to treating sources; lack of neurological treatment, no emergency room visits or hospitalizations, medication improved symptoms, R. 26);

11

evidence of Plaintiff's daily activities; the location, duration, frequency and intensity of Plaintiff's pain; precipitating and aggravating factors; treatment received for relief of pain; and measures taken by Plaintiff to relieve the pain (Plaintiff's own testimony, R. 22).

In addition to 20 C.F.R. § 404.1529(c), Plaintiff cites *Eden v. Berryhill* to support her argument that the ALJ did not consider all proper evidence in making his decision.  According to Plaintiff, the *Eden* Court emphasized certain factors for evaluating migraine headaches, which are as follows:

> [1] Whether the claimant has been diagnosed with migraines; [2] whether the claimant has received treatment and medication; [3] the length of the history of complaints and treatment relating to migraines; [4] the alleged severity and frequency; [5] the symptoms the claimant alleges the migraines cause; and [6] whether the record contains any statements from doctors questioning the alleged frequency or severity.

*Eden*, 2017 WL 1404380, at *19-20 (citing *Kulbacki v. Colvin*, 2016 WL 2609984, at *6 (W.D. Pa. May 6, 2016).  A review of the ALJ's decision, however, reveals that the ALJ did consider these factors even though he did not specifically cite to the *Eden* case.  The ALJ acknowledged Plaintiff's diagnosis of migraines and that the impairment was severe; the ALJ recapped Plaintiff's treatment and history of complaints related to her migraines, specifically noting a lack of treatment with medical doctors and active complaints to medical professionals; Plaintiff's testimony vis-à-vis her migraine headaches and associated symptoms; Plaintiff's testimony regarding her daily activities; and her admission that her medication helps to relieve her migraine symptoms.  R. 22, 23, and 26.  Therefore, and to the extent *Eden v. Berryhill*, 2017 WL 1404380 is applicable and appropriately considered, the ALJ complied with the suggestions contained therein.[1]

---

[1] *Eden v. Berryhill* is an unpublished case from the Southern District of West Virginia.

Moreover, it should be noted that the evidence of the plaintiff's migraine headaches in *Eden v. Berryhill* differs significantly from the evidence in the instant case.  In *Eden*, Mr. Eden produced evidence of numerous visits to the emergency room because of severe and unrelenting migraine headaches.  Evidence also indicated that Mr. Eden frequently complained to medical providers of having persistent, throbbing headaches with associated photophobia, sonophobia, nausea, vomiting, and dizziness.  Mr. Eden treated with a neurologist who diagnosed him with migraine headaches and who further opined that his headaches were likely triggered by a venous malformation in the left frontal lobe of his brain.  Mr. Eden underwent radiation oncology treatments and took multiple medications with varied success.  He was admitted to the ICU because of his migraines and over a two-and-a-half-year period, made numerous trips to the emergency room and to his treating physicians with complaints of migraine headache pain and associated symptoms.  *Eden*, 2017 WL 1404380.  The evidence in the instant case is substantially different.  There are no documents which suggest Plaintiff sought emergency treatment for primary complaints related to her migraine headaches.  There is also no evidence which suggests that Plaintiff suffered from a malformation which triggered her migraines.  Finally, there is nothing in the medical evidence of record which suggests Plaintiff was admitted to the hospital for treatment of her migraine headaches.

Plaintiff next argues that the ALJ 'cherry-picked' favorable evidence to support his finding of 'no disability,' while ignoring evidence favorable to Plaintiff, and further that there is no inconsistency between the evidence in the record and Plaintiff's assertions vis-à-vis her migraine headache pain.  Plaintiff, however, fails to cite specifically to any point in the record which supports either of these two assertions.  Moreover, a review of the record reveals that, in line with the ALJ's determination, Plaintiff's testimony regarding her migraine headache pain is

not consistent with the balance of the evidence contained within the record.  This argument is therefore not persuasive.

### 3.  Substantial Evidence

Substantial evidence supports the ALJ's finding that Plaintiff is not disabled within the meaning of the Social Security Act.[2]

### a.  Plaintiff's testimony

During the December 15, 2016 hearing, Plaintiff testified that she experiences approximately five (5) migraines per month.  They start as a small headache and over the course of three (3) days, develop into a full-blown migraine.[3]  Once the headache turns into a migraine, the headache lasts approximately twenty-four (24) hours.  Treatment of her migraine headache includes getting into bed, applying a cold ice pack, turning off all lights and sounds (including television) and placing a door stop at her bedroom door to prevent cold air and smells from entering the room.  Once Plaintiff has started having a migraine, Imitrex helps "most of the time." R. 54.

### b.  Objective medical evidence

Plaintiff underwent an Electroencephalogram on July 1, 2013, at MiR Neurology and Spine Center.  The EEG was normal with no focal, diffuse or generalized abnormalities noted.

### c.  "Other" (Subjective) medical evidence

Plaintiff cites a number of medical records in support of her assertion that "[t]hroughout the medical evidence of record, and since her motor vehicle accident in March 2010, [Plaintiff] has complained of severe, chronic headache pain that has been diagnosed as cervicalgia, tension

---

[2] Plaintiff appeals the ALJ's determination of 'no disability' only insofar as her impairment of migraine headaches. As a result, the undersigned has limited the discussion of substantial evidence to this impairment.

[3] There was no indication as to whether Plaintiff attempts to treat a headache when it is a 'small' headache, or whether she would be able to prevent the 'small' headache from developing into a 'full-blown migraine' headache.

headaches, and migraines for which she has undergone physical therapy and several prescription medication regimens, including Fioricet, Percocet, and Imitrex," and that, therefore, the ALJ's determination is not supported by substantial evidence.  ECF No. 12 at 4.  The documents to which Plaintiff cites are as follows: R. 393, 397, 403, 404, 435, 438, 445, 732, 1121, 1257, 1336, and 1429.  *Id.*  Plaintiff also cites to a headache diary she maintained for the administrative hearing: R. 1099-1100.  The Court will examine each of these records in the context of the overall medical record in which these documents appear.

### 1.  Rankin Physical Therapy (5/21/10 – 8/6/10)

R. 393 is a referral note from Plaintiff's primary care physician, Brian Stanley, M.D. which evidences Plaintiff's referral to physical therapy for evaluation and treatment of Plaintiff's tension headaches.  Though the note does not elaborate further on Plaintiff's medical history or her diagnosis, the note does indicate that Plaintiff's first physical therapy appointment is 5/21/10.

R. 397 is a therapy note from 7/7/10 wherein Plaintiff complained of daily headaches.

R. 403-404 are documents from Plaintiff's initial physical therapy appointment on 5/21/10 which show that Plaintiff complained of severe headaches since her motor vehicle accident, and that she was diagnosed with tension headaches.

Plaintiff was involved in a motor vehicle accident on March 2, 2010.  On 5/21/10, Plaintiff commenced treatment at Rankin Physical Therapy for complaints of headaches, left leg pain, hip and knee pain and low back pain (all appearing to have resulted from the motor vehicle accident).  Her diagnoses included a cervical strain and tension headaches.  At the time of her initial physical therapy visit, she was considered a "good rehabilitation candidate."  R. 403.  She attended physical therapy for nineteen (19) visits between 5/21/10 and 8/6/10.  However, she did not return to therapy after the 8/6/10 visit, so she was discharged from therapy.  R. 394-404.

While Plaintiff was referred to physical therapy following her motor vehicle accident, and while she received a diagnosis of cervical strain and tension headaches, Plaintiff appears to have stopped treatment without explanation instead of following it through to completion. Plaintiff's last physical therapy appointment was approximately over three (3) years before she filed the instant application for disability and over six (6) years before the administrative hearing. There is no indication that she returned to physical therapy at any time after ceasing this treatment.

### 2. Sarim R. Mir, M.D. and Mir Neurology Center
### (11/30/12 – 2/8/14)

Records 435, 438 and 445 are treatment records from Dr. Mir and Mir Neurology Center. In R. 435, Plaintiff reported that she takes Fioricet as needed for headaches, which are "moderate and bilaterally pounding." She reported three (3) headaches a week. R. 438 notes Plaintiff's report of "headaches about 1-2 times every few weeks." She reported taking Fioricet as needed, which was prescribed by her primary care physician. She tolerated the Fioricet well and denied any focal neurological symptoms with the headaches. Finally, R. 445 reveals Plaintiff's history of suffering from headaches twice a week. She reported associated photophobia and sonophobia. She denied neurological deficits with the headaches but took Fioricet which helped.

A comprehensive review of Plaintiff's records from Dr. Mir and Mir Neurological Center reveals that Plaintiff presented for her initial visit on 11/30/12 for complaints of thigh pain, low back pain and neck pain. She reported a car accident two (2) years prior. An MRI from 4/19/11 of the lumbar spine revealed moderate degenerative disc disease at L5-S1 level. R. 463-464.

On 1/11/13, Plaintiff returned for a six (6) week follow up with complaints of neck and lumbar back pain. She did not complain of headaches at this visit. R. 461-463.

On 7/1/13, Plaintiff presented to Mir Neurology Center with complaints of numbness and tingling in the hands and paresthesia in the left thigh and back pain.  She also complained of neck pain, and headaches, which were moderate.  Her medical history included a report that she suffered from three (3) headaches a week, which she treated with Fioricet as needed, as prescribed by her primary care physician. She also noted that her primary care physician had referred her to physical therapy.  She was diagnosed with carpal tunnel syndrome, headache, lumbar disc displacement, tobacco use disorder, mononeuritis - leg unspecified, skin sensation disturbance, cervicalgia, spasm of muscle.  An EEG was ordered.  R. 435-437.

On  8/29/13,  Plaintiff  presented  for  a  follow-up  visit  with  substantially  the  same complaints as before.  She reported moderate, bilateral, pounding headaches – approximately three (3) per week.  She took Fioricet for the headaches, which helped to alleviate her symptoms.  Plaintiff's diagnoses were substantially the same.  She was advised to keep a headache diary and to perform progressive relaxation exercises.  R. 459-461.

On 9/9/13, Plaintiff again presented for treatment with primarily the same complaints and observations as her 7/1/13 appointment.  She reported the Fioricet helped with her headaches and she tolerated the medication well.  She denied focal neurological symptoms with the headaches during the appointment.  Her diagnoses remained substantially the same.  She was to continue the Fioricet for breakthrough headaches.  R. 438-440.

At the next visit of 11/04/13, she voiced substantially the same complaints as previous.  She also noted that she experienced two (2) headaches per week in the back of her head and in the frontal region.  She also complained of associated photophobia and phonophobia with the headaches.  She denied any focal neurological deficits with the headaches.  She was still taking Fioricet, which she reported helped with the headaches.  Her diagnoses remained substantially

the same.  She was advised to start a headache diary and if her headaches worsened, they would consider starting her on a prophylactic medication.  She was also referred to Dr. Mohammad Akmal for pain management.  R. 442-445.

At her visit of 11/25/13, Plaintiff presented for a follow-up visit with substantially the same complaints as before.  With regard to her headaches, she described them as moderate in intensity and bilateral.  She denied focal neurological deficit and reported that Butalbital had helped her.  The balance of her exam was unremarkable, and she was given substantially the same diagnoses as before.  She was to continue with Dr. Akmal for pain management.  R. 446-448.

There are no further treatment records from Dr. Mir or Mir Neurological Center contained in the medical evidence of record.

While it appears that Plaintiff discussed her headaches with Dr. Mir, it nevertheless appears that she received little by way of neurological treatment for the same.  Indeed, Dr. Mir is not the doctor who prescribed Fioricet for Plaintiff's headaches.  This prescription came from Plaintiff's primary care physician.  Additionally, Plaintiff consistently reported that the Fioricet helped with her headaches and that she tolerated the medication well.  The additional medication, Butalbital, also helped Plaintiff.  There is no indication that Dr. Mir made a finding that additional treatment was recommended or necessary for Plaintiff's headaches.

### 3.  Winchester Medical Center

In documents 732 and 1121 (which are substantively the same document), under "Assessment and Plan," it is noted that Plaintiff has a history of migraine headaches.  The note says to continue with Percocet and Tylenol along with home medication.

18

A more comprehensive review of this note reveals that on 3/20/13, Plaintiff was admitted to Winchester Medical Center for complaints of diarrhea for the previous two (2) weeks with abdominal discomfort, nausea and vomiting.  Plaintiff was evaluated and admitted for further evaluation for these complaints.  There is nothing significant in this record as it relates to Plaintiff's migraine headaches, other than Plaintiff's report of "off and on...migraine headaches," and a history of migraine headaches is noted.  She was told to continue with Percocet and Tylenol along with home medication for the same.  R. 731-733; and 1120-1122.

While the aforementioned recommendation vis-à-vis Percocet is clear, there is nevertheless no indication in the medical records that Plaintiff was prescribed Percocet for her migraine headaches.  It is also unclear from this record why the treatment provider believed Plaintiff was prescribed Percocet for her migraine headaches.

### 4. Plaintiff's Headache Diary

During October 2014 and November 2014, Plaintiff appears to have maintained a headache diary to present during the Social Security disability hearing.  In October 2014, Plaintiff reported seven (7) moderate headaches and nine (9) severe headaches.  In November 2014, Plaintiff reported six (6) moderate headaches and nine (9) severe headaches.  R. 1099-1100.  However, other than Plaintiff's generalized statements to various medical treatment sources that Fioricet and Imitrex help to relieve her headaches, there is no evidence of which the undersigned is aware that Plaintiff sought emergency or other acute medical treatment for any of the headaches documented in this headache diary.

### 5. Valley Health – War Memorial Hospital

Document 1257 is a record from Valley Health at War Memorial Hospital for treatment date 3/29/15.  Plaintiff presented with a primary complaint of abdominal pain.  A history of headache is noted.  Headache is also noted as a standing diagnosis.

Document 1336 is another record from Valley Health, but the significance is unknown as it does not mention Plaintiff's migraine headaches.

Finally, Document 1429 is another record from Valley Health wherein Plaintiff presented for treatment on 3/30/16 for evaluation of possible sinusitis, ear infection and body aches.  She complained of right ear pressure/pain, achiness, facial pain and headache, among other things. She also complained of left shoulder pain and right upper arm pain.  The significance of this record is unclear as the record does not mention Plaintiff's migraine headaches.  Plaintiff did complain of headache; however, said complaint was made in the context of a sinus infection.

A comprehensive review of the records from Valley Health reveals as follows:

On 8/09/13, Plaintiff underwent arthroscopic surgery to her left knee and a partial medial meniscectomy to repair a tear of the left medial meniscus.  The surgery was successful, and Plaintiff was discharged to home.  Plaintiff was not treated for headache at this visit. R. 573-622.

On 10/08/13, Plaintiff presented for X-rays of her left knee, which showed degenerative arthritis with severe narrowing of medial femoral tibial joint space and osteophyte formations. She was not treated for headache at this visit.  R. 569-572.

On 11/08/13, Plaintiff presented to the Emergency Department with left knee pain.  She related that she was walking down the stairs and felt a pop.  Crutches and a knee immobilizer were provided.  Plaintiff was discharged to home with instructions to follow up with her primary care provider.  She was not treated for headache at this visit.  R. 547-568.

On 2/18/14, Plaintiff presented to the Emergency Department with complaints of moderate right knee pain after a fall. X-rays were obtained, with no acute abnormality seen. She was diagnosed with a knee injury/contusion/sprain. She was not treated for headache at this visit. R. 515-546.

On 4/30/14, Plaintiff presented for an X-ray of her right shoulder as a result of complaints of pain. The x-ray was normal. She was not treated for headache at this visit. R. 511-514.

On 6/27/14, Plaintiff presented to the Emergency Department with complaints of low back pain after lifting a large, heavy object into her car. She felt and heard a "pop" in her back. She underwent an X-ray of her lumbar spine which revealed mild worsening of levoscoliosis which was thought to be related to muscle spasm and stable, degenerative changes at L5-S1. Plaintiff was diagnosed with an acute lumbar strain and acute low back pain. She was discharged to home. She was not treated for headache at this visit. R. 792-8070

On 7/28/14, Plaintiff again presented to the Emergency Department with complaints of a direct-blow injury to the chest as a result of a fall. There was also injury to the left shoulder and left upper arm. Plaintiff denied hitting her head. Plaintiff was scheduled for knee surgery the following day. Plaintiff underwent X-rays of left ribs and chest, which revealed no evidence of acute displaced rib fracture, pneumothorax or pleural effusion. She was diagnosed with chest wall injury and discharged to home. She was not treated for headache at this visit. R. 838-855.

On 7/29/14, Plaintiff was admitted to the hospital for a total left knee replacement. No complications were recorded. She underwent therapy while inpatient and was discharged on 8/1/14 to home. She was not treated for headache at this visit. R. 856-970.

On 12/11/14, Plaintiff presented with a complaint of a sore throat.  A strep test was given, which was negative.  Plaintiff was discharged to home and instructed to follow up with her doctor.  She was not treated for headache at this visit.  R. 1218-1231.

On 3/29/15, Plaintiff presented to Valley Health at War Memorial Hospital with complaints of abdominal pain, nausea and back pain.  At the time, her past medical history included, among other things, headaches.  Plaintiff was diagnosed with constipation, irritable bowel and adhesions.  She was discharged to follow up with her primary care provider.  She was not treated for headaches at this visit.  R. 1257-1260.

On 3/30/16, Plaintiff presented to Valley Health at War Memorial Hospital with complaints of right ear pressure/pain, achiness, facial pain, headache, productive cough and sinus pressure and drainage from the right ear.  Plaintiff was diagnosed with Acute Sinusitis and Acute Right Otitis Media.  Plaintiff's migraine headaches were not mentioned.  Plaintiff also complained of left shoulder pain and right upper arm pain.  Plaintiff further stated that she had been working as a personal care giver since November requiring her to assist patients into and out of bed, and on/off the toilet.  It was noted that she had not missed work.  R. 1429-1430.

### 6.  A and I Pain Management Center

A review of Plaintiff's records from A and I Pain Center, Dr. Mohammed Akmal, M.D., reveals that Plaintiff treated approximately twelve (12) times between 11/18/13 and 8/18/14 for primary complaints of low back pain and leg pain.  Plaintiff underwent a right facet joint block on 2/20/14.  She was prescribed pain medication, including oxycodone and monitored for the same.  There is no indication in these records that Plaintiff sought pain management for her migraine headaches.  R. 632-690, 998-1001.  On 7/14/14, Plaintiff called Community Tri-State

Health Center and requested a referral to a new pain management center.  R. 691.  There is no indication in the medical records that Plaintiff treated with another pain management outfit.

### d.  Analysis

As the aforementioned summary reveals, although Plaintiff's recorded past medical history typically included a note that she suffered from migraine headaches, as the medical evidence of record shows, Plaintiff did not seek much, if any, treatment for the same.  The undersigned acknowledges that this lack of treatment does not mean that Plaintiff did not and does not suffer from migraine headaches.  However, it also does not provide corroborating evidence to substantiate Plaintiff's averments with respect to the intensity of the pain experienced and the frequency of the headaches.  When examining this evidence in conjunction with other evidence of record, including the fact that Plaintiff's activities of daily living are not apparently restricted (as late as March 2016, Plaintiff was working as a personal care giver and had not missed work), it is clear that substantial evidence supports the conclusion to which the ALJ came: that Plaintiff is not disabled under the Social Security Act because of her migraine headaches.

## V.    Recommendation

Accordingly, and for all of the foregoing reasons, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

**Any party who appears *pro* se and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of**

such objections should be submitted to the District Judge of Record.  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, except as approved by the Court upon Motion.  Any Motion to Exceed the Court's page limit shall be filed no later than one week before the deadline for the submission of the memorandum, objection or response.  LR Civ P 9.02.

Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Wright v. Collins*, 766 F.2d 841, 845-48 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985).

The Court **DIRECTS** the Clerk of the Court to mail a copy of this Report and Recommendation to any *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record.

Respectfully submitted this 7th day of May 2019.

/s/ James P. Mazzone
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE